**BASIC FUN, INC., Plaintiff–Appellant,**

**and**

**I.D.E.A., Inc. and Razz–A–Matazza Corp., Cross Defendants,**

**v.**

**RBTACQ, INC. and Russ Berrie & Company, Inc., Defendants/Cross Claimants–Appellees.**

No. 01–1639.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 14, 2002.

Before MAYER, Chief Judge, MICHEL, and SCHALL, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Basic Fun, Inc. ("Basic Fun") appeals the decision of the United States District Court for the Eastern District of Pennsylvania granting summary judgment of non-infringement of U.S. Patent No. RE 36,143 ("the '143 patent") in favor of RBTACQ, Inc. and its parent company Russ Berrie and Company, Inc. (collectively, "RBTACQ"). *Basic Fun, Inc. v. Cap Toys, Inc.*, No. 97–2051, 2001 WL 694561 (E.D.Pa. June 6, 2001).[1] We *affirm.*

## DISCUSSION

### I.

*The Patented Dispenser*

The '143 patent discloses and claims a motorized dispenser for dispensing a strip food product, such as bubble gum sold in rolls, and a method of dispensing the product with such an apparatus. Figure 1 of the patent illustrates the patented dispenser:

1. During the litigation, Cap Toys, Inc. was renamed RBTACQ, Inc.

900

## FIG. 1

A switch 95 is arranged to be slid into any one of three longitudinal positions, a first or "OFF" position, a second or "ON" position, and a third or "CUT" position. The OFF position is the intermediate position. When the switch is in the OFF position, it can be pushed to the right (given the orientation as shown in the above figure) into an ON position. This activates a motor that advances a food strip out of dispensing slot 60. When the switch is returned to the OFF position, the motor deactivates. From the OFF position, the switch can be pushed to the left into a CUT position. In the CUT position, a blade 151, which is coupled to the switch, severs the portion of the food strip that extends out of the dispensing slot 60 from the portion of the strip that remains within the housing.

*Claims 1 and 3 of the '143 Patent*

Independent claims 1 and 3 of the '143 Patent read as follows, with the relevant limitations underlined:

1. A method for dispensing a strip of a food product in a desired length from a portable dispenser, said dispenser having a slotted housing, an outlet, severing means, motor means, and a manually actuated switch for causing said motor means and said severing means to operate, *said switch being mounted in said slot of said housing and being arranged to linearly slide into any one of three positions, said switch having a first position wherein said motor means is not energized, a second position wherein said motor means is energized, and a third position, said severing means being mounted on said switch such that movement of said switch from said second position to said third position causes said food product to be severed,* said strip comprising an elongated web of an edible material, said method comprising disposing said strip within the dispenser so that said strip is coiled up in a compact configuration having a free end portion extending to said outlet, sliding said switch from said first position to said second position to advance a desired length of said free end portion of said strip out of said outlet, and sliding said switch from said second position to said third position to sever said desired length of said free end portion of said strip from the remaining portion of said strip to form a dispensed section of said strip which may be placed in a user's mouth, while the remaining portion of said strip remains within said dispenser.

\*        \*        \*        \*        \*        \*

3. In combination a dispenser and a strip of a food product, said strip comprising an elongated web of an edible material which is coiled up in a compact configuration having a free end portion, said dispenser comprising:

a. a housing having a slot;

b. a closed storage compartment for storing food product to be dispensed;

c. an outlet;

d. motor means for advancing a desired length of said free end portion of said strip out of said outlet;

e. a wall isolating said storage compartment from said motor means to keep sanitary food product to be dispensed;

f. severing means for severing said desired length of said free end portion of said strip from the remaining portion of said strip to form a dispensed section of said strip which may be placed in a user's mouth, while the remaining portion of said strip remains within said housing; and,

g. manually actuated means for causing said motor means and said severing means to operate, said manually actuated means comprising a switch, said switch being mounted within said slot in said housing and *being arranged to linearly slide into any one of three positions, said switch having a first position wherein said motor means is not energized, a second position wherein said motor means is energized,* said severing means being mounted on said switch such that movement of said switch from said second position to a third position causes said food product to be severed.

*The Prosecution History*

The '143 reissue patent originally issued as U.S. Patent No. 5,579,669 ("the '669 patent"). During the prosecution of the '669 patent, the Examiner rejected the applicants' original method claims as being anticipated by U.S. Patent 5,113,980, issued to Ream et al. ("Ream"), which discloses a rolled gum dispenser with a housing having a coiled length of gum and a severing means to cut off a desired length of gum. The Examiner also rejected the original apparatus claims as obvious in light of Ream and U.S. Patent No. 3,494,-235, issued to Postolowski ("Postolowski").

Postolowski discloses a motorized gun for dispensing tinsel for decorating Christmas trees. The Postolowski gun is operated by a trigger that is biased so that it is normally in a front "rest" position in which the motor is OFF. To dispense the coiled material stored within the dispenser, a user pulls the trigger from its front "rest" position to a rear "shoot" position, thereby turning the dispensing motor ON and dispensing the stored material. When the trigger is released, the trigger automatically returns to its "rest" position and the motor shuts off. With the trigger's automatic return to its "rest" position, a blade attached to the trigger severs the dispensed material. When the trigger is in the "rest" position, the blade blocks the opening through which tinsel is dispensed.

In rejecting Basic Fun's pending claims, the Examiner asserted that the trigger of Postolowski was a three-position switch, claiming that in addition to its rest and shoot positions, the trigger had a middle neutral (OFF) position. To overcome this rejection, Basic Fun argued as follows:

[C]ontrary to the PTO's position, . . . Postolowski[ ] does not disclose or suggest a three-position switch. Rather, Postolowski teaches a trigger 35 that is arranged to pivot between (1) a "rest" position, and (2) a "shoot" position.

＊　　＊　　＊　　＊　　＊　　＊

The originally filed Specification provides support for the switch of Appli-

cants' invention moving between an "OFF" position, an "ON" position and a "CUT" position (Specification, p. 10, lns 25–26 through p. 11, ln. 1). The trigger 35 of Postolowski operates between a "rest" position and a "shoot" position. The trigger of Postolowski has no third position.

Basic Fun also amended claims 1 and 3 to specifically recite a switch arranged to linearly slide into any of the switch's "ON," "OFF" or "CUT" positions. As a result of Basic Fun's arguments and amendments,

claims 1 and 3 were allowed. Later, during the reissue proceeding for the '143 patent, Basic Fun distinguished one of its own prior art dispensers by arguing that the claims 1 and 3 "are directed to a dispenser having a housing having a slot wherein a switch is mounted, the switch being arranged to linearly slide into any one of three positions."

*The Accused Device*

Below is a drawing showing the accused device, RBTACQ's "Power Gum Dispenser."

The switch in the accused dispenser shown above is spring biased downwards, so that when no finger pressure is applied, the switch rests in the bottommost position. When the switch is resting in the bottommost position, the motor is off and the dispensing slot is obstructed by a bottom plate (not shown in the drawing). The bottom plate is attached to the underside of the switch and moves within the inside of the housing. When the switch is moved upwards from the bottom position, the bottom plate moves upward with the switch, thereby uncovering the dispensing slot.[2] When the switch reaches the topmost position, the motor turns on and food product

is dispensed through the dispensing slot. The switch can also be moved into an intermediate position and then laterally moved into an indent. When the switch is in the indent, the motor is off and the dispensing slot is open. The switch will remain fixed in the indent even when no finger pressure is applied to the switch. The instructions printed on the Power Gum Dispenser packaging indicate that the dispenser is loaded with gum by pushing the switch into the indent, opening the cover of the dispenser, placing a roll of gum in the chamber of the dispenser, feeding a strip of the roll through the dispensing slot, and closing the cover. When the

---

**2.** In describing the accused device, the parties use slightly different terminology. We have adopted the terminology used by RBTACQ. What we have referred to as the "switch," Basic Fun refers to as the "thumb grip" component of the switch. According to Basic Fun, the thumb grip and the bottom plate are two elements that together make up the "switch assembly." The difference in terminology does not affect our analysis.

switch is moved out of the indent, spring bias returns the switch to the bottom position.

*The District Court Proceedings*

After suit was filed, RBTACQ in due course moved for summary judgment, arguing that the Power Gum Dispenser's switch does not *linearly* slide into three positions, as required by the claims of the '143 patent. In response, Basic Fun submitted the declaration of Michael Kind, one of the inventors named on the '143 patent. Relying on the Kind declaration, Basic Fun argued that the switch of the accused device does in fact have three linear positions.

The district court granted RBTACQ's motion for summary judgment of non-infringement for several reasons. First, the court concluded that RBTACQ had advanced several somewhat inconsistent infringement theories during the course of litigation. In that regard, the court found that Mr. Kind's declaration contradicted his earlier deposition testimony without any explanation for the discrepancy, and therefore was entitled to no weight. Second, the court found that the switch of the accused device does not have a separate "CUT" position. Third, the court found that the switch of the accused device has only two linear positions, instead of the three linear positions required by the claims of the '143 patent. In its analysis, the court concluded that, during prosecution, Basic Fun gave up coverage to a switch that *operates between only two positions.*

## II.

We review a district court's grant of summary judgment *de novo. Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575, 29

USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). We must draw all reasonable factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

An infringement analysis is a two-step process, in which the court first construes the claims as a matter of law. The properly construed claims then are compared to the accused device to determine, as a question of fact, whether all of the claim limitations are present in the accused device. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc).

## III.

Basic Fun's infringement theory is as follows: (i) The switch on RBTACQ's Power Gum Dispenser is in the claimed third (CUT) position when it is at the bottom of the slot. (ii) The switch is in the claimed second (ON) position, when it is at the top of the slot. (iii) The switch is in the claimed first (OFF) position when it is in an intermediate position, *but has not been slid into the indent*—in other words, the accused switch is halfway between the top and bottom positions but has not been moved laterally into the indent. To maintain this intermediate position, a user must hold the switch in place with a finger—otherwise the spring bias would return the switch down to the CUT position. We will refer to this position as the "non-indented intermediate position" to distinguish it from the position where the switch is fixed in the indent, which we will refer to as the "indented intermediate position."[3] Basic Fun

---

3.  In its brief, Basic Fun is somewhat unclear   as to whether it considers *both* the non-in-

does not argue that the accused dispenser infringes under the doctrine of equivalents.

The district court rejected this infringement theory, concluding that Basic Fun's argument "is analogous to arguing that a light switch contains a third position because the switch can be fixed in position between the 'on' and 'off' positions. Furthermore, it is entirely unsupported by any evidence in the record before the court." RBTACQ urges us to adopt the district court's conclusion on the ground that Basic Fun surrendered during prosecution any switch that, like the switch of Postolowski, operates between only two positions: a rest position and a shoot position.

Basic Fun responds that the non-indented intermediate position of the switch on the Power Gum Dispenser should be considered a separate switch position because it has a "distinct function." According to Basic Fun, it therefore follows that the Power Gum Dispenser has a three-position switch.

The parties also dispute whether Mr. Kind's declaration is inconsistent with his

earlier deposition testimony. However, we conclude that even if we consider the Kind declaration, we agree with the district court that that Basic Fun surrendered a two-position switch during prosecution and that the accused device lacks three linear positions. We therefore conclude that summary judgment was properly granted and that it is not necessary for us to address whether the district court erred in failing to give the declaration any weight.

## IV.

The switch of the Power Gum Dispenser has only two linear positions, and thus does not infringe the claims of the '143 patent. The dispenser disclosed in the '143 patent has three distinct linear positions: ON, OFF, and CUT. As discussed above, the applicant distinguished the claimed invention from Postolowski during prosecution by arguing that the Postolowski tinsel gun has a two-position trigger which pivots between a rest and a shoot position, not a three position switch. It is a well-settled proposition that a device does not infringe if it operates in the

dented intermediate position *and* the indented intermediate position to correspond to the claimed first (OFF) position. However, at oral argument, counsel for Basic Fun clarified that, according to his client's infringement theory, only the non-indented intermediate position corresponds to the claimed first (OFF) position, as illustrated by the following colloquy:

Court: You claim a three-position switch, correct?

Counsel: Yes.

Court: And In Order For There To Be Literal Infringement, The Accused Device Has To Have Three Positions.

Counsel: Correct.

Court: Now, we know with a certainty of two positions. Number one is the position when the machine is held in the hand and the spring bias is in effect, so the switch is sitting at one end. That's one position. The second position obviously is the position that is in effect when

one has pulled on the switch and the motor is operating. Correct?

Counsel: Correct.

Court: So we have two positions and so now we are looking for a third position. As I understand it—and correct me if I am wrong—the argument you are making is that the third position for literal infringement is the position which is midway between those two; it's the position that the switch is at when it is not in the detent or the indentation, but rather is opposite—it hasn't been moved laterally, but is opposite the place where one would move it laterally. Correct?

Counsel: That is correct your honor.

Presumably, Basic Fun adopted this infringement theory to avoid the argument made by RBTACQ in its motion for summary judgment of noninfringement: that the switch of the accused device is moved into the indented intermediate position by a lateral and not a linear motion, as required by the claims.

same manner as a device in a patent that was distinguished during prosecution. *See Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1304, 41 USPQ2d 1364, 1368 (Fed. Cir.1997)("[B]y distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover.")

The trigger of the Postolowski tinsel gun is the same in all material respects as the switch on the accused device; therefore, the non-indented intermediate position of the switch on the accused device cannot be considered a distinct switch position. Like the spring-biased switch of the Power Gum Dispenser, the Postolowski trigger operates between a rest/OFF position and a shoot/ON position. Also like the switch on the Power Gum Dispenser, the Postolowski trigger could be held in between the rest and shoot positions without activating the dispenser's motor. The claims of the '143 patent can not properly be construed to encompass a switch which does not stop at any point in the course of its linear passage.

We reject Basic Fun's argument that the non-indented intermediate position in the Power Gum Dispenser is a distinct switch position because it supposedly has the distinct function of allowing the dispenser to be loaded with gum. There is no indication either in the '143 patent or its prosecution history that the claimed dispenser's ability to load gum has any relevance in determining which points of travel along the switch's path should be considered distinct switch positions. Furthermore, as was explained by the applicants during prosecution of the '599 patent, when the Postolowski trigger is pulled from its rest position towards the shoot position, a blade which is attached to the trigger moves away from a roller which gives clearance for the tinsel to be dispensed through a nozzle. When the trigger is released, the motor stops and the blade snips the tinsel. The Power Gum Dispenser operates in the same manner. In short, the non-indented intermediate position of the accused dispenser can not be considered a separate switch position simply because one could theoretically load gum in that position.

Moreover, we note that there is no evidence in the record that supports Basic Fun's contention that the non-indented intermediate position of the switch on the Power Gum Dispenser has the distinct function of allowing the dispenser to be loaded with gum. The instructions accompanying the accused product indicate that the dispenser can be loaded when the switch is placed into the indented position and the cover is removed. The only item in the record relied on by Basic Fun to support its argument is the Kind declaration. However, nowhere in his declaration does Mr. Kind state that the accused device can be loaded when the switch is in the *non-indented* intermediate position. Mr. Kind merely states that the device can be loaded when the switch is "locked" in the indented position, which has the effect of freeing one of the user's hands for the loading process. Although we can speculate that the accused dispenser *could* be loaded while holding the switch in the non-indented intermediate position, the same thing could be said about the Postolowoski tinsel gun.

For the foregoing reasons, the decision of the district court granting summary judgment in favor of RBTACQ is affirmed.