**SPECTRUM INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**STERILITE CORPORATION, Defendant–Appellee.**

No. 98–1243.

United States Court of Appeals, Federal Circuit.

Dec. 9, 1998.

Alan B. Clement, Hedman, Gibson & Costigan, P.C., of New York, New York, argued for plaintiff-appellant. With him on the brief were Robert S.M. Gorman and Thomas M. Gibson.

Ernest V. Linek, Dike, Bronstein, Roberts & Cushman, LLP, of Boston, Massachusetts, argued for defendant-appellee.

Before CLEVENGER, SCHALL, and BRYSON, Circuit Judges.

CLEVENGER, Circuit Judge.

Spectrum International, Inc. ("Spectrum") appeals the summary judgment of the United States District Court for the Southern District of New York that Sterilite Corporation's ("Sterilite") storage crates do not infringe claims 2 and 11 in Spectrum's reexamined U.S. Patent No. 4,971,202 ("the '202 patent," originally issued November 20, 1990, reexamination certificate B1 4,971,202 issued May 27, 1997), either literally or under the doctrine of equivalents. *See* No. 96–CIV–8017 (WK) (S.D.N.Y. Jan. 27, 1998). Because in view of the '202 patent's prosecution history any infringement by Sterilite's accused crates cannot lie as a matter of law, we affirm, albeit on a different rationale than the one articulated by the district court. *See Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540, 218 USPQ 871, 880 (Fed.Cir.1983) ("We sit to review judgments, not opinions.").

I

Titled "Stackable Recycling Crate," the '202 patent is directed to "a box-like structure with four walls and a bottom." '202 patent at Col. 2, lines 67–68. Like an ordinary, uncovered box, the '202 crate contains a bottom side, two side walls, a front wall, and a back wall. Two features alter the typical configuration of a box to enable simulta-

neously the placement of large articles in the crate when stacked in tandem with other crates of its kind, while retaining the articles within the confines of the crate once the articles have been so placed. First, the upper and lower portions of the front wall are cut out such that when stacked, the upper cut-out portion of each lower crate and the lower cut-out portion of each upper crate together form a large, overall opening into which articles may be easily placed. Second, the front portion of the bottom side tapers to an incline that joins the central portion of the front wall, forming an internal storage compartment that is further enclosed laterally by the side portions, or "legs," of the front wall remaining after the upper and lower portions of the front wall have been excised.

The '202 patent originally recited 16 claims. The broadest original claim, claim 1, reads as follows:

1. A stackable crate comprising:
   (a) a pair of opposing sidewalls;
   (b) a back wall coupled to the sidewalls;
   (c) a front wall coupled to the sidewalls and having a first substantially rectangularly shaped opening at the top portion of the front wall and a second substantially rectangularly shaped opening at the bottom portion of the front wall, thereby defining in the front wall a central portion with the bottom edge of the central portion extending to form at each end a lower leg segment and the top

edge of the central portion extending to form at each end an upper leg segment; and
   (d) a bottom side being planar as the bottom side extends away from the back wall and tapering upwardly to merge with the central portion, wherein the bottom side as joined to the sidewalls and to the back wall to define a storage compartment in the interior of the crate.

On January 3, 1994, Spectrum apprised Sterilite of its view that Sterilite's "Storage Cart" product may infringe the '202 patent. On that same day, Spectrum also mailed a request for reexamination to the U.S. Patent and Trademark Office ("PTO"). A protracted 30–month reexamination proceeding ensued, culminating in a decision by the Board of Patent Appeals and Interferences, mailed July 26, 1996, affirming the examiner's final rejection of 11 out of the original 16 claims, including claim 1. Only claims 2, 11, and 14–16 survived reexamination. Claims 14–16 are not pertinent to this appeal and will not be further discussed.

Claims 2 and 11 each contain the requirement that the bottom side of the crate merge with at least a substantial portion of the *bottom edge* of the central portion of the crate's front wall. *See* '202 patent at Col. 5, lines 24–26; Col. 6, lines 4–7.[1] During reexamination, the examiner lodged a rejection of claims 2 and 11 over a prior art crate, shown in Figure 1, disclosed in DePutter, U.S. Patent No. 3,682,351 ("DePutter").

---

1. In claim 2, which depends from claim 1, this limitation is expressed as "wherein the bottom side merges with at least a substantial portion of the bottom edge of the central portion of the front wall." In claim 11, an independent claim narrower than claim 2, this limitation is expressed as "a bottom side being planar as the bottom side extends away from the back wall and tapering upwards to merge with at least a substantial portion of the bottom edge of the central portion," thus incorporating language from claim 1. The parties treat this limitation in the two claims as identical. We agree that there is no difference between the two expressions of this limitation and therefore treat them identically as well.

**Figure 1**

'To rebut the rejection, Spectrum argued that in the prior art crate, the bottom side merges with the top edge of the central portion of the front wall, but not the bottom edge. The PTO sustained the patentability of claims 2 and 11 solely on the basis of this argument.

Armed with its Board decision, Spectrum filed suit in the Southern District of New York on October 24, 1996, charging Sterilite with infringement of claims 2 and 11 by the "Storage Cart" illustrated in Figure 2:

**Figure 2**

After discovery, a hearing was held on cross-motions for summary judgment, and on January 28, 1998, the district court issued an order and judgment granting Sterilite's motion for summary judgment of noninfringement and denying Spectrum's cross-motion for summary judgment of infringement. The court reasoned that because Spectrum did not, in the court's view, provide any special definition for the claim term "wall," the term's ordinary meaning, as discerned by the court, controlled. Given its construction of the claims, the court found that Steriite's accused product does not have a front wall as required by claims 2 and 11, and as such does not infringe these claims either literally or under the doctrine of equivalents. Spectrum now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

II

Spectrum predicates its argument for reversal of the district court's decision as to both claims 2 and 11 on a deconstruction of Sterilite's accused product. This deconstruction, presented by Spectrum in its opening brief, is shown in Figure 3:

## Figure 3

Referring to this diagram, Spectrum asserts that Sterilite's accused product contains a back wall (b), a pair of opposing sidewalls (a) coupled to a front wall (c) having rectangular openings at the top ($c_t$) and bottom ($c_b$) that define a central portion (cp) with a top edge ($cp_t$) and bottom edge ($cp_b$), wherein the central portion extends to form an upper leg segment ($l_t$) and a lower leg segment ($l_b$), and further wherein a bottom side (d) that is planar as it extends away from the back wall tapers upwardly to merge with at least a substantial portion of the bottom edge ($cp_b$) of the front wall, along the line marked "X". As such, argues Spectrum, Sterilite's accused product meets each limitation common to claims 2 and 11.

Of particular note is Spectrum's reliance on line "X" as representing the set of points along which Sterilite's accused crate meets the limitation in claims 2 and 11 requiring that the upwardly tapering bottom side merge with at least a substantial portion of the bottom edge of the central portion of the front wall.

Spectrum recognizes that it must rely on line "X" because unless the merger of the bottom side and the front wall occurs along line "X", Sterilite's accused product cannot infringe either claim 2 or 11, whether literally or by equivalents. As the relevant portion of Sterilite's reply-brief diagram of its accused crate's side view, shown in Figure 4, makes clear, if the upwardly tapering (D2) bottom side (D1) of the accused crate is considered to merge with the front wall at the interface of D3 and D4, rather than at the interface of D2 and D3 as asserted by Spectrum, the merger of the accused crate's bottom side and its front wall occurs at the top, not the bottom, of the central portion, contravening the explicit requirement in claims 2 and 11 to the contrary. Accordingly, literal infringement is precluded. *See, e.g., Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1015 (Fed.Cir.1998) ("To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement.") (internal citations omitted). Moreover, because merger of the bottom side and central portion of the front wall at the interface of D3 and D4 constitutes

the very embodiment that Spectrum explicitly relinquished during prosecution, doctrine of equivalents infringement is precluded as well under the opposing doctrine of prosecution history estoppel. *See, e.g., Wang Lab., Inc. v. Mitsubishi Elecs. Am., Inc.,* 103 F.3d 1571, 1577, 41 USPQ2d 1263, 1269 (Fed.Cir. 1997) ("Prosecution history estoppel acts as one check on application of the doctrine of equivalents, by precluding a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application for the patent.") (internal citations omitted).

## Figure 4

Spectrum attempts to evade the consequences of a straightforward determination of noninfringement on this basis by presenting, in essence, two arguments. First, citing *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271, 229 USPQ 805, 812 (Fed.Cir. 1986), for the proposition that a claim employing the transitional term "comprising" does not exclude additional, unrecited elements, Spectrum contends that the open "comprising" language of claims 2 and 11 permits Spectrum to deconstruct Sterilite's cart and call line "X" the merging interface of the bottom side and front wall in Sterilite's accused crate, because Sterilite has done nothing more than add an irrelevant, unrecited element to the "front" of an otherwise infringing device. Second, Spectrum argues that nothing of record either limits the front wall recited in claims 2 and 11 to any particular height or precludes claim 2 and 11 (again relying on the open claim language "comprising") from encompassing crates in which the bottom side merges with both the bottom *and* top of the front wall's central portion. As such, the mere fact that the central portion of the "front wall" in Sterilite's accused crate—D3 in Figure 4, according to Spectrum—is a single, thin layer of plastic having a top and bottom that both merge with the upwardly tapering bottom side of the accused crate does not preclude, and indeed warrants, a finding of infringement.

The district court focused on, and found fault with, the first prong of Spectrum's second argument, *i.e.,* Spectrum's contention that D3 in Figure 4 is a front "wall" for purposes of claims 2 and 11. Opining during oral hearing that such a construction of the term "wall" flies in the face of any reasonable interpretation of the term, the district court found that Sterilite's accused crate does not possess a "front wall" as required by claims 2 and 11, and therefore does not infringe these claims as a matter of law, either literally or under the doctrine of equivalents.

Spectrum asserts legal error in the district court's construction of claims 2 and 11 on the ground that as its own lexicographer, Spectrum had made clear in the claims and written description of the '202 patent that the "front wall" of claims 2 and 11 places no limitation on the size of the openings above

and below the central portion, and hence on the height of the central portion itself. Spectrum also argues in the alternative that the "legs" in the accused crate supply any requisite height requirement imposed by the claim term "wall" and that the central portion, defined by the upper and lower openings, is unbounded by any requirement for a particular vertical dimension. In either event, Spectrum contends that the district court improperly interpreted claims 2 and 11, and as a result, erred in finding no infringement either literally or under the doctrine of equivalents. Sterilite points to a dictionary definition of "wall" in support of the district court's construction, and further argues that by defining the front face of its accused crate along the line marked "X" in Spectrum's diagram, what Spectrum calls "legs" are clearly part of the side wall, not the front wall. As such, Sterilite urges this court to find no merit in either of Spectrum's theories for reversal.

## III

■ Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Even disputed material facts will not defeat summary judgment when, taking all factual inferences in favor of the nonmovant, the moving party is nonetheless entitled to judgment as a matter of law. *See Young Dental Mfg. Co. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592 (Fed.Cir. 1997). We review a grant of summary judgment de novo. *See id.* Our review, as with any infringement inquiry, must first engage the legal step of construing the asserted claims and then dispose of the factual infringement issue by comparing the accused device with the asserted claims in accordance with their proper construction. *See, e.g., Ekchian v. Home Depot, Inc.,* 104 F.3d 1299, 1302, 41 USPQ2d 1364, 1366 (Fed.Cir.1997).

■ In determining the proper meaning of the claims, "we first consider the so-called intrinsic evidence, *i.e.,* the claims, the written description, and, if in evidence, the prosecution history." *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1347, 47 USPQ2d 1418, 1424 (Fed.Cir.1998). Moreover, "[i]f upon examination of this intrinsic evidence the meaning of the claim language is sufficiently clear, resort to extrinsic evidence, such as treatises and technical references, as well as expert testimony when appropriate, should not be necessary." *Id.*

Unambiguous intrinsic evidence in turn provides sufficient input to the rules of claim construction, in particular in this case, the rule that explicit statements made by a patent applicant during prosecution to distinguish a claimed invention over prior art may serve to narrow the scope of a claim. *See Southwall Techs. Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed. Cir.1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."); *Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985) (stating that the prosecution history, which includes "all express representations made by or on behalf of the applicant to the examiner to induce a patent grant," limits the interpretation of the claims "so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance").[2]

■ That explicit arguments made during prosecution to overcome prior art can lead to narrow claim interpretations makes sense, because "[t]he public has a right to rely on such definitive statements made during prosecution." *Digital Biometrics,* 149 F.3d at 1347, 47 USPQ2d at 1427 (pointing to "[n]otice [as] an important function of the patent prosecution process, as reflected by the [patent] statute itself"). Indeed, "[b]y

---

**2.** Our recourse to language emphasizing the relinquishing of subject matter during prosecution should not be construed to undermine the "clear distinction between following the statements in the prosecution history in defining a claim term, and the doctrine of prosecution history estoppel, which limits expansion of the protection under

the doctrine of equivalents when a claim has been distinguished over relevant prior art." *Southwall,* 54 F.3d at 1578, 34 USPQ2d at 1679 (citing *Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 862, 20 USPQ2d 1252, 1262 (Fed. Cir.1991)).

distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Ekchian,* 104 F.3d at 1304, 41 USPQ2d at 1368. Therefore, a patentee, after relinquishing subject matter to distinguish a prior art reference asserted by the PTO during prosecution, "cannot during subsequent litigation escape reliance [by the defendant] upon this unambiguous surrender of subject matter." *Southwall,* 54 F.3d at 1581, 34 USPQ2d at 1681; *Ekchian,* 104 F.3d at 1304, 41 USPQ2d at 1368 (citing *Southwall* ). Accordingly, "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers." *Southwall,* 54 F.3d at 1576 (citing *Unique Concepts, Inc. v. Brown,* 939 F.2d 1558, 1562, 19 USPQ2d 1500, 1504 (Fed.Cir.1991)); *see also Alpex Computer Corp. v. Nintendo Co. Ltd.,* 102 F.3d 1214, 1221, 40 USPQ2d 1667, 1672 (Fed.Cir.1996) ("Therefore, because Alpex admitted during prosecution that its claims do not cover a video display system based on shift registers as in Okuda ... Alpex's claims cannot now be construed to cover the [accused device], which possesses the same structural and functional traits as Okuda."). This principle applies with equal force to arguments made by a patentee to sustain the patentability of claims during reexamination. *See, e.g., Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 532, 41 USPQ2d 1001, 1007 (Fed.Cir.1996) ("We also believe the district court correctly interpreted the prosecution history to require that the 'perforation means' limitation cannot be construed to include ultrasonic bonded seams. Cole surrendered ultrasonic bonded seams in her requests for reexamination.").

## IV

■ As discussed, Spectrum argued to the PTO during reexamination that the limitation in claims 2 and 11 requiring that the bottom side of Spectrum's claimed crate merge with the bottom edge of the central portion of the front wall distinguishes over DePutter because in DePutter's crate the bottom side merges with the top edge, and not the bottom edge, of the central portion of the front wall. Spectrum now argues that this claim limitation does not exclude infringement by a crate in which the bottom side merges with both the bottom edge and the top edge of the

central portion of the front wall, because the open claim term "comprising" permits the addition of any elements to those listed in the claims. In effect, Spectrum argues for a broad construction of the phrase "wherein the bottom side merges with at least a substantial portion of the bottom edge of the central portion of the front wall" that does not exclude the possibility that the bottom side merges with both the bottom edge and the top edge of the central portion of the front. wall.

Spectrum's argument must fail. If "comprising" permits the addition of any elements, then it not only permits the addition of merger of the bottom side with the top edge of the central portion of the front wall, but also allows the addition of a downward-projecting appendage to the central portion along the line at which the bottom side merges with both the bottom and top edges of the central portion, thus transforming merger of the bottom side with the bottom and top edges of the central portion into merger of the bottom side with the top edge alone. But this embodiment is in the prior art. Therefore, to have sustained the patentability of claims 2 and 11 over the prior art asserted during reexamination, Spectrum must have relinquished from the language of these claims the possibility that merger of the bottom side also occurs with the top edge of the central portion of the front wall. Were the result otherwise, Spectrum could cut off the downward-projecting central portion of De-Putter's front wall, be left with a crate in which the bottom side merges with both the bottom and top edges of the central portion of the remaining front wall, add back the downward projection with "comprising," and thus hold DePutter liable for infringement. This Spectrum clearly cannot do.

■ Spectrum's reliance on *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271, 229 USPQ 805, 812 (Fed.Cir.1986), as support for its attempt to encompass the additional, unrecited elements in Sterilite's accused crate within the confines of claims 2 and 11 through recourse to the recitation in these claims of the term "comprising" is thus misplaced. To be sure, *Moleculon* acknowledges that "a transitional term such as 'com-

prising' ... does not exclude additional unrecited elements, or steps (in the case of a method claim)," 793 F.2d at 1271, 229 USPQ at 812, but in the very same sentence the court limited this broad view of "comprising" to avoid altering the scope of the particular claim step at issue. *See id.* Neither may the term "comprising" alter the scope of the merger element in the claim at issue here. "Comprising" is not a weasel word with which to abrogate claim limitations. *See id.*

To summarize, we conclude that the limitation in claims 2 and 11 requiring that the bottom side merge with the bottom edge of the central portion of the front wall excludes the possibility that the bottom side also merges with the top edge. The claim term "comprising" cannot restore this excluded subject matter.

## V

■ Spectrum argues that Sterilite's accused crate meets each limitation in claim 2, and therefore literally infringes this claim. Spectrum correctly understands that "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." *Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1211, 48 USPQ2d 1010, 1015 (Fed. Cir.1998). Summary judgment of no literal infringement is proper, therefore, when no reasonable jury could find that every limitation recited in a properly construed claim is found in an accused device. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353–54, 48 USPQ2d 1674, 1676 (Fed.Cir.1998) (citing *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 532, 41 USPQ2d 1001, 1007 (Fed.Cir.1996)).

■ As discussed, claim 2 excludes from its literal scope the possibility that a crate's bottom side merges with both the bottom and top edge of the central portion of the front wall. Yet Spectrum unequivocally asserts that this is precisely the configuration found in Sterilite's accused product. Accordingly, no reasonable jury could find that Sterilite's accused crate meets all the limitations in claim 2, and thus Sterilite's crate cannot literally infringe claim 2 as a matter of law.

■ Spectrum next argues that even if not literally infringed, Sterilite's accused crate nevertheless infringes claim 2 under the doctrine of equivalents. Spectrum also argues that Sterilite's accused crate infringes claim 11 under the doctrine of equivalents. While it is true that a product can infringe an asserted claim under the doctrine of equivalents if each element in the claim, even if not literally present, is met by a substantial equivalent, *see Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1049, 1053, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1871, 1875 (1997), the countervailing doctrine of prosecution history estoppel "bar[s] recapture by the patentee of scope that was surrendered in order to obtain allowance of the claims." *Pall Corp. v. Micron Separations Inc.,* 66 F.3d 1211, 1218, 36 USPQ2d 1225, 1230 (Fed.Cir.1995); *see also Wang Lab., Inc. v. Mitsubishi Elecs. Am., Inc.,* 103 F.3d 1571, 1577, 41 USPQ2d 1263, 1269 (Fed.Cir.1997). Whether prosecution history estoppel applies is a matter of law. *Id.* If we determine, upon reviewing the relevant prosecution history, that estoppel applies, doctrine of equivalents infringement is precluded as a matter of law, and summary judgment of noninfringement is appropriate. *Id.*

■ Here, as already discussed, Spectrum clearly relinquished from the scope of both claims 2 and 11 the possibility that the bottom side of a crate merges with both the bottom edge and the top edge of the central portion of the front wall, in order to sustain the patentability of these claims over prior art asserted by the examiner. These actions therefore trigger application of prosecution history estoppel, precluding infringement under the doctrine of equivalents as a matter of law. *See Wang Lab.,* 103 F.3d at 1577, 41 USPQ2d at 1269.

## VI

Two ancillary issues remain to be addressed. First, Sterilite urges us to invalidate Spectrum's '202 patent over two items in the prior art, on condition that we adopt the district court's claim construction. However, the district court did not rule on validity. While we are obliged to refrain from vacating a lower court's invalidity judgment when we determine that a patent has not been infringed, *see Phonometrics, Inc. v. Northern Telecom Inc.,* 133 F.3d 1459, 1468,

45 USPQ2d 1421, 1428–29 (Fed.Cir.1998) (citing *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993)), here there is nothing to potentially vacate. We therefore do not reach the validity issue.

 Second, Spectrum urges us to reverse the district court on the ground that the court "may have been swayed by its examination of the patentee's commercial embodiment" that it requested Spectrum to submit. To be sure, a court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment of his claimed invention. *See, e.g., International Visual Corp. v. Crown Metal Mfg.*, 991 F.2d 768, 772, 26 USPQ2d 1588, 1591 (Fed.Cir.

1993). Any error that may have been committed by the district court in this case, however, is harmless in view of our claim construction.

## VII

For the reasons discussed, the district court's summary judgment of no infringement is affirmed.

### COSTS

No costs.

*AFFIRMED.*