NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**BASF AGRO B.V., ARNHEM (NL), WADENSWIL BRANCH,**
*Plaintiff-Appellant,*

AND

**BAYER S.A.S.,**
*Plaintiff-Appellant*,

**v.**

**MAKHTESHIM AGAN OF NORTH AMERICA, INC. AND CONTROL SOLUTIONS, INC.,**
*Defendants-Appellees.*

_____

2012-1206

_____

Appeal from the United States District Court for the Middle District of North Carolina in No. 10-CV-0276, Judge William L. Osteen, Jr.

_____

Decided: March 20, 2013

_____

KENNETH A. GALLO, Paul Weiss, Rifkind, Wharton & Garrison LLP, of Washington, DC, argued for plaintiffs-

appellants. With him on the brief were JOHN E. NATHAN, CATHERINE NYARADY, KRIPA RAMAN, BRIAN P. EGAN, ERIN WIGGINS and CASSIUS SIMS, of New York, New York. Of counsel on the brief were ROBERT J. KOCH, Milbank, Tweed, Hadley & McCloy, LLP, of Washington, DC, and PRESSLY M. MILLEN, Womble Carlyle Sandridge & Rice, LLP, of Raleigh, North Carolina. Of counsel was KENT E. KEMENY, Paul Weiss, Rifkind, Wharton & Garrison LLP, of Washington, DC.

HENRY C. DINGER, Goodwin Procter, LLP, of Boston, Massachusetts, argued for defendants-appellees. With him on the brief were MARTA E. GROSS and JOSEPH B. CRYSTAL, of New York, New York, and APRIL E. ABELE, of San Francisco, California.

_____

Before REYNA, BRYSON,[*] and WALLACH, *Circuit Judges*.

REYNA, *Circuit Judge*.

This is an appeal from a final judgment of the United States District Court for the Middle District of North Carolina ("district court") granting summary judgment of non-infringement for defendants Makhteshim Agan of North America and Control Solutions, Inc. (collectively, "MANA").

Plaintiffs Bayer S.A.S. and its exclusive licensee BASF Agro B.V., Arnhem (NL), Wadenswil Branch (collectively, "BASF") sued MANA for infringement of two patents covering a method of applying insecticide to protect against termites. The district court construed the claims of the patents. In view of language in the patents and representations made by the patentee to the Patent Office, the district court determined that the patentee had disclaimed certain methods of application. Based on its

_____

[*] Judge Bryson assumed senior status on January 7, 2013.

claim construction, the district court granted summary judgment of non-infringement for MANA.

Because the district court correctly construed the claims of the patents, and because under the correct construction MANA's accused product does not infringe, we affirm.

## I. PROCEDURAL POSTURE

In 2010, BASF sued MANA for infringement of two U.S. patents related to a method for applying insecticide in and around a building: U.S. Patent Nos. 6,414,010 (the '010 Patent) and 6,835,743 (the '743 Patent) (collectively, "the Kimura patents"). The '743 Patent is a divisional of the same application that matured into the '010 Patent. BASF is the exclusive licensee of the Kimura patents in the United States.

After initiating suit, BASF moved the district court for a preliminary injunction. In evaluating whether a preliminary injunction was warranted, the district court held a *Markman* hearing and preliminarily construed the claims of the Kimura patents. *BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, No. 1:10-CV-276, 2011 WL 2135129 (M.D.N.C. May 27, 2011). In construing the claims, the district court looked to the patents' shared specification and prosecution history. The district court determined that during examination before the Patent Office the inventor, Yasuo Kimura, had disclaimed "barrier treatments." Specifically, the district court found that Kimura had disclaimed "applying insecticide without loopholes around a building, and applying insecticide without loopholes under a building, respectively." *Id.* at *4. Because the district court found that the instructions included with MANA's accused product mentioned only barrier treatments, the district court denied BASF's request for a preliminary injunction.

The district court subsequently issued a detailed claim construction order in which it confirmed its earlier finding that Kimura had disclaimed treatments that do not create "untreated locations (*i.e.*, loopholes) through which the crawling insect can reach the building without being exposed to the insecticide." *BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, No. 1:10-CV-276, 2011 WL 2607940, at *6–10 (M.D.N.C. June 30, 2011). In view of the district court's claim construction order, MANA moved for summary judgment of non-infringement. The district court granted MANA's motion and entered summary judgment of non-infringement. *BASF Agro B.V. v. Makhteshim Agan of N. Am., Inc.*, No. 1:10-CV-276, 2012 WL 84985 (M.D.N.C. Jan. 11, 2012).

BASF appeals. We have jurisdiction under 35 U.S.C. § 1295(a)(1).

## II. STANDARDS OF REVIEW

"[T]he construction of a patent . . . is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). We thus review issues of claim construction without deference. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

We review a district court's grant of summary judgment under the law of the regional circuit, in this case the Fourth Circuit. *Landmark Screens, LLC v. Morgan, Lewis, & Bockius, LLP*, 676 F.3d 1354, 1361 (Fed. Cir. 2012). The Fourth Circuit reviews a district court's grant of summary judgment de novo. *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). In reviewing a district

court's grant of summary judgment, we view the facts in the light most favorable to the losing party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## III. THE KIMURA PATENTS

The Kimura patents are directed to a method of applying a broad-spectrum insecticide known as Fipronil. The goal of the patented method is to protect existing or planned buildings against "crawling insects, especially against termites." '010 Patent col. 1 ll. 6–8.

According to the patented method, "an effective amount of insecticide active compound is spread around or under the said building at *discrete locations*." *Id.* at [57] (abstract) (emphasis added). The following illustration in the '010 Patent shows an example of these "discrete locations," which are illustrated as opaque boxes placed around the outline of a building's perimeter:



*Id.* col. 5 ll. 27–35. According to the Kimura patents' shared specification, the patented method provides an advantage over prior art methods which required "operators [to] apply the chemical around or under the building or houses to *form a barrier* against termites [sic] invasion." *Id.* col. 1 ll. 10–13. The specification explains that the prior art methods suffered from a significant disadvantage: "loopholes in the treatment[s] may cause failure of protection of the houses." *Id.* col. 1 ll. 13–14. The Kimura patents sought to alleviate this problem by providing "a curative treatment which is effective even when attacked parts are untreated," that is, the patents sought "to provide a termite treatment *without barrier*." *Id.* col. 1 ll. 35–37, 43–45.

According to the patented method, "the active ingredient is applied on discrete locus [sic]," *id.* col. 3 ll. 41–42, "inside or outside the outline of the house or buildings to be built," *id.* col. 3 ll. 23–25.  Representative claim 1 of the '010 Patent recites a "[p]rocess for the protection of a building against damage caused by insects," comprising

> b) *forming treated and untreated locations* along the perimeter of the building by applying an effective amount of said solution or suspension to *discrete locations around or under said building* along the perimeter of the building, wherein the treated locations are the discrete locations along the perimeter of the building where said solution or suspension has been applied and the untreated locations are the remaining portions of the perimeter where the solution or suspension was not applied;
>
> wherein the combination of said treated locations and said untreated locations along the perimeter of the building equal the total perimeter of the building and further wherein said treated locations make up 0.5 to 7.5 meter per 10 meter of the total perimeter of the building
>
> . . . .

*Id.* col. 5, claim 1 (emphasis added).  In accordance with the description in the specification, the claim requires both "treated and untreated locations along the perimeter of the building" instead of a continuous barrier without loopholes.

## A. PROSECUTION HISTORY

During prosecution of the '010 Patent, the examiner rejected Kimura's claimed invention as obvious in view of several prior art references.  Although Kimura sought to distinguish the cited prior art references, the examiner issued a final rejection.  Following the examiner's final

rejection, Kimura filed a response including a declaration supporting patentability made by Dr. Joe Hope (the "Hope declaration"), whom Kimura held out as one of ordinary skill in the art. Dr. Hope suggested that, in contrast to Kimura's invention, all prior art methods taught forming a complete barrier without loopholes. In response to the Hope declaration, the examiner allowed Kimura's application, which issued as the '010 Patent on July 2, 2002.

### 1. THE EXAMINER'S REJECTIONS

The examiner initially rejected the claims of Kimura's patent application as obvious in view of a combination of prior art references. These references included two U.S. patents to Crosby and Mihealsick (U.S. Patent Nos. 3,624,953 and 5,390,440) ("Crosby" and "Mihealsick"), and two international applications filed under the Patent Cooperation Treaty (Int'l Pub. Nos. WO 95/22902 and WO 96/16544). The examiner found that the international applications taught "that fipronil is an old termiticide applied to the same locus of the claims." The examiner also found that the Crosby and Mihealsick patents "disclose methods of combating termites by applying a termiticide to discrete locations around a building or into the ground around a building."

Kimura sought to overcome the examiner's rejections by distinguishing the cited references. Kimura distinguished the Crosby patent as being "designed to provide a 'barrier' around the building to be protected" rather than forming both "treated and untreated locations" as in Kimura's claimed invention:

> [T]he method disclosed in the Crosby patent is designed to provide a "barrier" around the building to be protected. There is no teaching or suggestion in the Crosby patent of a method for the protection of a building wherein a dilute solution or suspension of an insecticide in a liquid is applied to

> discrete locations along the perimeter of the build-
> ing *so as to form treated and untreated locations.*

(emphasis added). Kimura similarly distinguished the
Mihealsick patent as requiring "the formation of a barrier
that has no untreated locations":

> There is no teaching or suggestion whatsoever of a
> process for the protection of a building wherein a
> dilute solution or suspension of an insecticide is
> applied to discrete locations along the perimeter of
> the building to form treated and untreated loca-
> tions. *In contrast, the purpose of Mihealsick appa-
> ratus and method is to ensure the formation of a
> barrier that has no untreated locations.*

Kimura insisted that the prior art did not contain any
"teachings or suggestions that would motivate an artisan
of ordinary skill to deviate from the established practice of
*creating a continuous barrier around a building.*" Kimura
argued that none of the cited references "teaches the
deliberate creation of untreated locations (*i.e.*, loopholes)
through which the crawling insect can reach the building
without being exposed to the insecticide." "In fact," Ki-
mura urged, "all of the cited documents teach away from
this approach because they endeavor to create a barrier
between the crawling insects and the building so that the
insect cannot reach the building without being exposed to
the insecticide."

The Examiner was not persuaded by Kimura's argu-
ments, and in a final Office action rejected Kimura's
claims as obvious in view of the cited prior art references.
The Examiner noted,

> The prior art teaches that the same composition
> may be applied to the same locus in the same
> amounts. Therefore, the results would clearly be
> the same. The above rejection is deemed proper
> and adhered to.

## 2. THE HOPE DECLARATION

In response to the examiner's final rejection, Kimura filed an amendment to the claims and submitted a declaration by Dr. Joe Hope. Kimura represented Dr. Hope as an "artisan who is clearly skilled in this field." Kimura's remarks argued that "Dr. Hope verifies that . . . a skilled artisan would not have attempted to protect a structure against [termites] . . . by applying an insecticidally active substance to discrete locations around the perimeter of the structure so as to form treated and untreated locations around the perimeter of the structure in the manner claimed." Remarks 9–10. Kimura also argued that "Dr. Hope also verifies that the cited prior art is all directed to so called 'barrier' treatment techniques, wherein a *complete barrier is formed around the perimeter* of a structure to be protected." Remarks 10.

In his declaration, Dr. Hope stated that "the teaching of the common general knowledge and prior art . . . directs the skilled artisan to make a barrier treatment of chemical insecticide around a structure." Dr. Hope individually distinguished the prior art references cited by the examiner. The Crosby patent, he said, "recites a method wherein a volatile insecticide is placed at discrete locations around a house with the intention that the insecticide may vaporize and thus create a barrier to termite ingress." The Mihealsick reference, Dr. Hope said, involves the application of insecticide "under a concrete slab and/or around a house" for the purpose of "creating or regenerating a barrier." Dr. Hope characterized Kimura's claimed invention as an "unobvious and surprising process" because "insecticide is applied to discrete locations along the perimeter of the structure to form treated and untreated locations along the perimeter."

Based on Dr. Hope's declaration and Kimura's remarks, the examiner allowed the claims of Kimura's application.

## IV. THE ACCUSED PRODUCTS

MANA sells an insecticidal compound containing Fiprionil under the trade name "Taurus SC." MANA's Taurus SC product includes a label with information and application instructions. The relevant labeling provides that the product, "when used as recommended in this label, provides effective prevention and/or control of subterranean termites." MANA's labeling further provides that the product "should be applied in a manner to provide a continuous treated zone."

The portion of MANA's labeling relevant to this suit describes "Exterior Perimeter/Localized Interior (EP/LI) Structural Termite Treatment." According to the instructions for this "EP/LI" treatment,

> Structural termite protection is achieved by first establishing a *continuous treated zone along the exterior foundation* of the structure. Localized interior treatments are then made to areas where known termite activity is observed. . . .

> This treatment method is designed to be non-invasive to the interior of the structure by applying a *continuous treatment along the exterior foundation* and *only treating the interior areas that show termite activity*.

With respect to the exterior perimeter aspect of the EP/LI treatment, the instructions provide, "When conducting an exterior perimeter application, [the product] must be applied in a manner to provide a continuous treatment zone to prevent termites from infesting the structure." As the district court noted, the instructions repeatedly call for a "continuous treated zone" along the exterior of the structure, or a "complete exterior perimeter treatment zone."

While the EP/LI instructions call for a continuous treated zone along the *exterior* perimeter of a structure,

they specify that a "continuous treated zone" is unnecessary on the structure's *interior*. Instead, "[t]argeted interior applications may be made to vulnerable areas . . . as part of a complete treatment." These targeted interior applications include "treating the interior areas that show termite activity."

BASF accuses MANA of infringing the Kimura patents by virtue of the localized interior ("LI") portion of the instructions on its product labels.

## V. CLAIM CONSTRUCTION AND DISCLAIMER

The district court construed the claims of the Kimura patents based on a detailed review of the patents' shared specification and prosecution history. The district court focused in particular on Kimura's representations to the Patent Office during examination, including the Hope declaration. Based in part on Kimura's representations, the district court determined that Kimura had "disclaimed applying insecticide without loopholes around a building, and applying insecticide without loopholes under a building, respectively." *BASF*, 2011 WL 2607940, at *7.

The district court rejected BASF's attempts to qualify various statements in the Hope declaration and to introduce extrinsic evidence, in the form of expert testimony, that Kimura's disclaimer was not intended to be so broad. *Id.* at *10. The district court concluded that the claimed method, properly construed, "(a) requires the deliberate creation of untreated locations (*i.e.*, loopholes) through which the crawling insect can reach the building without being exposed to the insecticide and (b) disclaims applying insecticide without loopholes around a [future] building, under a [future] building, and both around a [future] building and under a [future] building." *Id.* at *11.

On appeal, BASF argues that the district court construed Kimura's disclaimer too broadly. BASF concedes

that the Kimura patents teach a treatment "without barrier." Nevertheless, BASF argues that the district court should have limited the disclaimed treatments to treatments "without loopholes both around *and* under a building." According to BASF, the specification of the Kimura patents and the Hope declaration support its proposed construction. BASF argues further that the extrinsic evidence of record, including expert testimony, confirms that barrier treatments were understood as blocking all points of entry, both inside and outside a building's boundary. Finally, BASF argues that the claims of the Kimura patents use the open-ended term "comprising." In BASF's view, this open-ended term warrants a finding of infringement even where the accused product combines a localized interior treatment with an exterior barrier treatment. BASF asks us to reverse the district court's claim construction and summary judgment of non-infringement.

Determining the proper meaning of a claim begins with the language of the claim. *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("[T]he claims are of primary importance, in the effort to ascertain precisely what it is that is patented."). We presume that the terms in the claim mean what they say. *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002). We interpret the claim's words "in light of the intrinsic evidence of record, including the written description, the drawings, and the prosecution history." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). If a claim term has a plain and ordinary meaning, our inquiry ends. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). If, however, the claim term does not have an ordinary meaning, and its meaning is not clear from a plain reading of the claim, "we turn to the remaining intrinsic evidence, including the written description, to aid in our construction of that term." *Telem-*

*ac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1326 (Fed. Cir. 2001).

We have held that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.").

During the process of obtaining a patent, a patentee may make statements to the Patent Office to distinguish her claimed invention from the prior art. Where such statements indicate a clear disavowal of subject matter, the patentee disclaims such subject matter and narrows the scope of her claims. *Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection."). The public has a right to rely on representations a patentee has made in the course of obtaining her patent. *See Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1998); *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1347 (Fed. Cir. 1998); *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("The prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution."); *Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985) (stating that the prosecution history, which includes "all express representations made by or on behalf

of the applicant to the examiner to induce a patent grant," limits the interpretation of the claims "so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance"); *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30 (1997) (noting "the public's right to clear notice of the scope of the patent as embodied in the patent file.").

Generally, a patent's intrinsic record does not warrant consideration of extrinsic evidence. Where a patent's claims, written description, and prosecution history are complete and unambiguous, a court need not resort to extrinsic evidence such as treatises, technical references, or expert testimony. Where the intrinsic record leaves ambiguities and unresolved questions, however, a court may consider extrinsic evidence, including expert testimony. *Phillips,* 415 F.3d at 1317–18; *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004). Extrinsic evidence must be "given the appropriate weight by the trial court." *Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250, 1259-60 (Fed. Cir. 2012) (quoting *Spansion Inc. v. Int'l Trade Comm'n,* 629 F.3d 1331, 1344 (Fed. Cir. 2010)). To this end, we have been careful to distinguish between, on one hand, expert testimony on the state of the art, and on the other hand, expert testimony regarding the *proper construction* of a disputed claim term. *See, e.g., Vitronics*, 90 F.3d at 1585. The latter should play a more limited role in a court's analysis, especially where the intrinsic record is self-evident.

In any event, extrinsic evidence cannot vary the terms of the claims or otherwise contradict the intrinsic record. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Accordingly, expert testimony inconsistent with the intrinsic record has little if any probative value. *Vitronics*, 90 F.3d at 1584–85. ("[E]ven if the judge permissibly decided to hear

all the possible evidence before construing the claim, the expert testimony, which was inconsistent with the specification and file history, should have been accorded no weight.").

We find here that the district court correctly construed the claims of the Kimura patents based on its determination that Kimura had disclaimed "barrier treatments" without loopholes. First, the language of the claims suggests exclusion of barrier treatments. Second, the specification clarifies and confirms a disclaimer. Third, Kimura relied on the disclaimer during prosecution. Fourth, the claims' open-ended language does not moot Kimura's disclaimer. And fifth, extrinsic evidence is not available to contradict such a clear and definite disavowal of subject matter.

First, the language of the claims suggests exclusion of barrier treatments. The claims unambiguously require areas that are treated and untreated: "forming treated and untreated locations . . . by applying an effective amount . . . to discrete locations around or under said building." The claims specify that "the untreated locations are the remaining portions of the perimeter where the solution or suspension was not applied." In accordance with this language, the claims require portions of the perimeter to which insecticide has not been applied. In other words, the perimeter must have untreated "loopholes." Thus, the claims exclude treatments that form a single unbroken barrier, or a barrier without such loopholes.

Second, the shared specification of the Kimura patents disclaims barrier treatments. According to the specification the patented method provides an advantage over prior art methods which required "operators [to] apply the chemical around or under the building or houses *to form a barrier* against termites [sic] invasion." A disadvantage of these prior art methods, the specification

explains, is that "loopholes in the treatment may cause failure of protection of the houses." Thus, "an object of the instant invention is to provide a curative treatment which is effective even when *attacked parts are untreated*," that is "to provide a termite treatment *without barrier*." '010 Patent col. 1 ll. 35–37, 43–45. According to the patented method, "the active ingredient is applied on discrete locus [sic]," *id.* at col. 3 ll. 41–42, not continuously to form a barrier free of loopholes. The specification thus confirms that the claims do not cover the prior art's loophole-free barrier treatments.

Third, the prosecution history indicates a clear disclaimer of barrier treatments. Kimura distinguished the Crosby and Mihealsick patents cited by the examiner as being "designed to provide a 'barrier' around the building to be protected" rather than forming both "treated and untreated locations" as in the claimed invention. Those patents, Kimura said, require "the formation of a barrier that has no untreated locations." Kimura insisted that the prior art did not contain any "teachings or suggestions that would motivate an artisan of ordinary skill to deviate from the established practice of *creating a continuous barrier around a building*."

Kimura asked the examiner to allow the claims based on Kimura's suggestion that no prior art reference "teaches the deliberate creation of untreated locations (*i.e.*, loopholes) through which the *crawling insect can reach the building without being exposed to the insecticide*." Kimura said, "all of the cited documents teach away from this approach because they endeavor to create a barrier between the crawling insects and the building so that the *insect cannot reach the building without being exposed* to the insecticide." Thus, Kimura intended to disclaim all treatments that form a barrier to prevent insects from breaching a building's perimeter without exposure to insecticide.

Kimura further relied during prosecution on the declaration of Dr. Joe Hope, who asserted that "the teaching of the common general knowledge and prior art as of [the filing of Kimura's application] directs the skilled artisan to make a barrier treatment of chemical insecticide around a structure . . . *i.e.*, [having] no untreated locations." Hope Decl. 2. Dr. Hope distinguished the method of the Crosby patent, which teaches "discrete applications around a house," as nevertheless being designed to "create a barrier to termite ingress." *Id.* at 3. Finally, Dr. Hope distinguished the Mihealsick patent as teaching a method of applying insecticide "under a concrete slab and/or around a house" for the purpose of "creating or regenerating a barrier to termites." *Id.* After reviewing the examiner's cited prior art, Dr. Hope concluded that Kimura's method was "unobvious and surprising." *Id.* at 3–4.

It is evident from Dr. Hope's declaration that he considered Kimura's method "surprising" because it did not require the creation of barriers around the perimeter of a building. Based on Dr. Hope's analysis of the prior art and characterization of the claimed invention, the examiner allowed the claims of Kimura's application. On issuance, Dr. Hope's representations became part of the Kimura patents' intrinsic record, and the public is entitled to rely on Dr. Hope's representations in determining the claimed invention's scope.

Fourth, the claims' use of the open-ended term "comprising" is not sufficient to overcome Kimura's clear disavowal of certain subject matter. As we have said, "The open-ended transition 'comprising' does not free the claim from its own limitations." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001). Nor is "comprising" a talismanic incantation that counteracts a clear disclaimer. *Spectrum,* 164 F.3d at 1379–80 ("'Comprising' is not a weasel word with which to abrogate claim limitations . . . [or] restore [] excluded subject matter."). We find Kimura's use of the word

"comprising" insufficient to overcome the clear and definite disclaimer which is evident from the Kimura patents' text and prosecution history.

Fifth, the expert testimony offered by BASF regarding the state of the prior art is insufficient to change the scope of Kimura's disclaimer. Extrinsic evidence cannot vary the terms of the claims or otherwise contradict the intrinsic record. *Markman*, 52 F.3d at 981. Even testimony from a qualified expert has little probative value if it is inconsistent with the intrinsic record. *Vitronics*, 90 F.3d at 1584 ("[E]ven if the judge permissibly decided to hear all the possible evidence before construing the claim, the expert testimony, which was inconsistent with the specification and file history, should have been accorded no weight."). BASF presented testimony that at the time of Kimura's invention an ordinarily skilled artisan would have understood barrier treatments to require formation of a complete barrier both around a building *and* underneath its foundation.

Kimura's argument that the prior art required treatment both around *and* under a building is contrary to the evidence intrinsic to Kimura's patents. The specification of the patents suggests that the prior art did not require dual application both around and under a building. '010 Patent col. 1 ll. 10–13 (referring to prior art methods in which "operators apply the chemical *around or under* the building or houses to form a barrier."). Indeed, the prior art references cited by the examiner teach barrier treatments applied *around* but *not under* a building. *See* Crosby fig.1; Mihealsick fig.2. Moreover, Kimura's and Dr. Hope's representations to the Patent Office indicate a clear disclaimer of treatments that form a barrier either around *or* under a building. Kimura Resp. 11 (distinguishing the Crosby patent on the basis that "the method disclosed in the Crosby patent is designed to provide a 'barrier' *around* the building to be protected." (emphasis added)); Hope Decl. 2 (distinguishing the Mihealsick

patent as teaching insecticide application "under a concrete slab *and/or around* a house" (emphasis added)).

For the reasons above, we conclude that the district court correctly construed the claims of the Kimura patents to exclude treatments which require application of insecticide "without loopholes around a building, under a building, and both around a building and under a building."

## VI. INFRINGEMENT

Where, in the course of prosecuting her patent, a patentee relinquishes certain subject matter, she may not "during subsequent litigation escape reliance [by another party] upon this unambiguous surrender of subject matter."[1]  *Southwall,* 54 F.3d at 1581.  Quite simply, "[c]laims may not be construed one way in order to obtain their allowance and in a different way against accused infringers."  *Id.* at 1576; *see also Alpex Computer Corp. v. Nintendo Co.,* 102 F.3d 1214, 1221 (Fed. Cir. 1996) ("[B]ecause Alpex admitted during prosecution that its claims do not cover a video display system based on shift registers as in Okuda . . . Alpex's claims cannot now be construed to cover the [accused device], which possesses the same structural and functional traits as Okuda."); *Spectrum*, 164 F.3d at 1378-79.

The parties do not dispute that the label of the accused products teaches an EP/LI treatment method in

---

[1]   This principle applies with equal force to arguments made by a patentee in reexamination or post-grant review. *See, e.g., Cole v. Kimberly-Clark Corp.,* 102 F.3d 524, 532 (Fed. Cir. 1996) ("We also believe the district court correctly interpreted the prosecution history to require that the 'perforation means' limitation cannot be construed to include ultrasonic bonded seams.  Cole surrendered ultrasonic bonded seams in her requests for reexamination.").

which an operator applies insecticide around a building to form a barrier, but inside the building only at discrete locations. Because MANA's accused product instructs application of a complete barrier around a building, it falls within the scope of Kimura's disclaimer. BASF may not now attempt to recapture disclaimed subject matter by isolating and selecting individual components of the accused method, which as a whole reaches the very result that Kimura expressly disclaimed.

## VII. CONCLUSION

Because Kimura expressly disclaimed insecticide treatments that form a complete barrier around or under a building, and because MANA's accused product require a complete barrier around a building, MANA's product cannot infringe the Kimura patents. The district court properly granted MANA's motion for summary judgment of non-infringement. The final judgment of the district court is

**AFFIRMED.**